**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: INSULIN PRICING LITIGATION** | **Case No. 2:23-md-03080 (BRM)(LDW)** **MDL No. 3080** |
| **THIS DOCUMENT RELATES TO:** | **OPINION** |
| *The State of Mississippi, ex rel. Lynn Fitch, Attorney General v. Eli Lilly and Company, et al.* | |
| Case No. 2:23-cv-04364 | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendants Novo Nordisk Inc. ("Novo Nordisk"), Sanofi-Aventis U.S. LLC ("Sanofi"), and Eli Lilly and Company's ("Eli Lilly") (collectively, "Manufacturer Defendants") Motion for Judgment on the Pleadings (the "Motion") of Plaintiff the State of Mississippi, ex rel. Honorable Lynn Fitch, Attorney General of the State of Mississippi's (the "State") claims as to GLP-1s pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 200.) The State filed an Opposition to Manufacturer Defendants' Motion (ECF No. 231), and Manufacturer Defendants filed a Reply (ECF No. 277). Having reviewed and considered the submissions filed in connection with the Motion, and for the reasons set forth below and for good cause having been shown, Manufacturer Defendants' Motion for Judgment on the Pleadings is **DENIED**.

I.    **BACKGROUND**

A.  **Factual History**

For the purposes of this Motion, the Court accepts the factual allegations in the Third Amended Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). However, the Court does not as true "conclusory allegations, unwarranted factual inferences, or legal conclusions. *Id*. (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)).

As the factual and procedural backgrounds of this matter are well-known to the parties, the Court will address only the facts pertinent to this Opinion. This action arises out of the State's challenge to Manufacturer Defendants' allegedly unfair and unconscionable pricing scheme for their analog insulin products. The State generally categorizes each defendant into one of two groups: Manufacturer Defendants or PBM Defendants[1] (collectively, "Defendants"). (Dkt. No. 2:23-cv-04364, ECF No. 65-1 ¶¶ 5–6.) The State contends Manufacturer Defendants, who manufacture the vast majority of insulins and other diabetic medications available in the United States, worked together to artificially and willingly raise their list prices of insulin medications, and then paid an undisclosed portion of that price back to the PBM Defendants in order to gain formulary preference. (*Id*. ¶¶ 7–13, 20–26, 277.) The State alleges that over the relevant time period, Manufacturer Defendants often raised prices "in lockstep," despite the fact that the cost to produce these drugs decreased during the same period. (*Id*. ¶¶ 13, 289–97.)

---

[1] PBM Defendants include Evernorth Health Inc. (formerly Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., and Medco Health Solutions (together, "Express Scripts"); CVS Health Corporation, CVS Pharmacy, Inc., Caremark Rx, LLC, Caremark PCS Health, LLC, and Caremark, LLC (together, "CVS Caremark"); and UnitedHealth Group Incorporated, OptumRx Inc., and OptumInsight, Inc. (together, "OptumRx") (collectively, with Express Scripts and CVS Caremark, "PBM Defendants").

PBM Defendants are pharmacy benefit managers ("PBMs"), or third-party administrators that negotiate drug costs and payments between health insurance providers and drug manufacturers. (*Id*. ¶¶ 6–11, 317.) Drug manufacturers set the list prices for their prescription drugs, including insulin. (*Id*. ¶¶ 20, 289, 357.) Here, the State alleges Manufacturer Defendants engaged in an unfair and unconscionable pricing scheme by artificially inflating the list prices for their insulin products so that they could offer rebates as a secret Manufacturer Payment to PBM Defendants in exchange for preferred formulary[2] placements, which the State contends caused it to overpay for insulin products. (*Id*. ¶¶ 350, 357–64, 389–94.)

The State also brings allegations regarding GLP-1s, which are non-insulin medications that can help control insulin levels, especially when they are used in conjunction with insulin. (*Id*. ¶¶ 274, 276.) The State alleges Manufacturer Defendants have released a number of these GLP-1s to "help control the level of insulin in the bloodstream of Type 2 diabetics." (*Id*. ¶ 274.) "Each of these drugs can be used in conjunction with insulins to control diabetes." (*Id*. ¶ 276.)

### B. Procedural History

On June 7, 2021, the State filed its Complaint in the Chancery Court of the First Judicial District of Hinds County, Mississippi under *The State of Mississippi, ex rel. Lynn Fitch, Attorney General v. Eli Lilly & Co., et al*. (Dkt. No. 2:23-cv-04364, ECF No. 1 ¶ 11.) The State filed a First Amended Complaint on June 8, 2021, and a Second Amended Complaint on September 24, 2021. (*Id*.) The State filed a Third Amended Complaint with permission from the Court on January 25, 2022. (Dkt. No. 2:23-cv-04364, ECF No. 65.) Manufacturer Defendants moved to dismiss the

---

[2] Formularies are a ranked list of approved drugs that an insurance plan will cover. (Dkt. No. 2:23-cv-04364, ECF No. 65-1 ¶ 7.) Drug manufacturers offer rebates and other incentives to PBMs to gain formulary access for their prescription drugs because they recognize that PBM formularies drive drug utilization. (*Id*. ¶¶ 20 n.1, 315, 392–94.)

Third Amended Complaint on March 21, 2022, for: (1) failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 2:23-cv-04364, ECF Nos. 83–84), and (2) lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) (Dkt. No. 2:23-cv-04364, ECF Nos. 85–86). The court denied both motions. (Dkt. No. 2:23-cv-04364, ECF No. 111.)

On May 9, 2023, the State filed a Motion for Transfer of Actions with the Judicial Panel on Multidistrict Litigation ("JPML") pursuant to 28 U.S.C. 1407 for Coordinated or Consolidated Pretrial Proceedings.[3] (Dkt. No. 2:23-cv-04364, ECF No. 237.) The JPML issued an order on August 3, 2023, ordering the case be transferred to the District of New Jersey for inclusion in the Insulin multidistrict litigation. (Dkt. No. 2:23-cv-04364, ECF No. 259.)

On June 4, 2024, the parties submitted a stipulated briefing schedule for Manufacturer Defendants' contemplated motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 193), which the Court entered on June 5, 2024 (ECF No. 194). Pursuant to this Court's Order, Manufacturer Defendants filed their Motion for Partial Summary Judgment on the Pleadings on June 7, 2024. (ECF No. 200.) The State filed its Opposition to the Motion on July 23, 2024 (ECF No. 231), and Manufacturer Defendants filed a Reply on September 6, 2024 (ECF No. 277).

## II.    LEGAL STANDARD

The standard for dismissal under Fed. R. Civ. P. Rule 12(c) is the same as that under Fed. R. Civ. P. Rule 12(b)(6). *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a

---

[3] The State thereafter filed a Corrected Motion for Transfer of Actions on May 12, 2023. (Dkt. No. 2:23-cv-04364, ECF No. 238.)

claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (internal quotation marks omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. "This inquiry focuses on the allegations in the complaint, not whether plaintiffs have pleaded sufficient facts to succeed on the merits." *Porter v. Valdez*, 424 F. App'x 382, 385 (5th Cir. 2011).

## III.    DECISION

Manufacturer Defendants argue this Court should grant partial judgment for Manufacturer Defendants as to GLP-1 products for two distinct reasons: (1) the State's claims as to GLP-1s are preempted by federal patent law; and (2) the State fails to plead any unlawful conduct related to GLP-1s. (ECF No. 200-1 at 8.) The Court addresses each in turn.

### A.  Preemption

Manufacturer Defendants first argue the State's claims pertaining to GLP-1s are preempted by federal patent law under binding Federal Circuit precedent. (*Id.* at 8–13.) Manufacturer Defendants contend they have "a legal exclusivity for a limited time" regarding pricing of GLP-1s "in exchange for discovering and disclosing these innovative new medications." (*Id.* at 9.) They claim the State's "alleg[ations] that Defendants' 'scheme' has rendered the price of diabetes medications, including GLP-1s, 'excessive,' 'exorbitant,' and 'grossly inflated and false'" are "squarely preempted as to patented drugs because [the State] seeks to change the way Manufacturers price their patented medications." (*Id.* at 11.)

The State responds that Manufacturer Defendants are over-simplifying their claims in order "[t]o shoehorn the State's claims into conflict preemption." (ECF No. 231 at 14.) The State argues its claims are based on conduct that is unlawful under the Mississippi Consumer Protection Act

("MCPA").[4] (*Id*. at 15.) The State further maintains its consumer protection claims are not preempted, as "consumer protection is an area traditionally regulated by states." (*Id*. at 16–17.) Moreover, the State contends the objectives of patent law are not to "immunize unlawful conduct in the marketplace." (*Id*. at 17–20.) Rather, according to the State,

> Patents reward inventors with the right to exclude other sellers of the patented product for a time. While the patent monopoly may allow greater profits in some circumstances[,] it *does not* liberate the inventor from other competition. After all, a patented $500 mousetrap is unlikely to generate any profits, because competitor products could remain on the market at a much lower price.

(*Id*. at 18.) Finally, the State asserts the purported GLP-1 patents are irrelevant to competition within the GLP-1 category, instead, "Defendants' unlawful conduct applicable to all of the at-issue drugs, patented or not, artificially inflated the prices of GLP-1s." (*Id*. at 19.)

"Federal patent law preempts state law claims to the extent that state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' in enacting the patent laws." *Wawrzynski v. H.J. Heinz Co.*, 574 F. App'x 99, 102 (3d Cir. 2014) (quoting *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257, 262 (1979)). "[T]here are three

---

[4] Specifically, the State alleges:

> Manufacturers published false list prices that they knew were untethered to the actual prices and that they knew were used to set the prices paid by Mississippi diabetics and payors, including the State. They repeatedly and in lockstep raised the list prices of all at-issue drugs, misrepresented and concealed the reasons behind the price increases, and continually increased the amount of Manufacturer Payments to the PBMs with the intent and effect of foreclosing diabetics' access to lower priced treatments. They then worked with PBMs to conceal and obfuscate their misconduct in furtherance of their scheme, in order to maximize Defendants' profits, to the detriment of diabetics and the State.

(ECF No. 231 at 14–15.)

objectives for patent law: (1) to provide an incentive to invent; (2) to promote the full disclosure of inventions; and (3) to ensure 'that which is in the public domain cannot be removed therefrom by action of the states.'" *In re Effexor Antitrust Litig.*, 357 F. Supp. 3d 363, 382 (D.N.J. 2018) (quoting *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1474 (Fed. Cir. 1998)). Accordingly, "when [a] state law cause of action includes additional elements not found in the federal patent law and state law is not an obstacle to the objectives of federal patent law, it is not preempted even if patent law is implicated." *Id.* (citing *Dow*, 139 F.3d at 1473). Specifically, in *Dow*, the Federal Circuit held the plaintiff's state law unfair competition claim was not preempted where it included additional elements not found in federal patent law and did not otherwise conflict with the objects of patent law. 139 F.3d at 1478–79.

Here, as in *Dow*, the State's consumer protection claims require proof of elements not found in a patent cause of action. *See In re Effexor*, 357 F. Supp. 3d at 383 ("[C]onsumer protection law protect[s] consumers from being overcharged for products, which is a wholly different goal than patent law."). The Court finds this case similar to that of *In re EpiPen Marketing, Sales Practices, & Antitrust Litigation*, cited by the State (ECF No. 231 at 19), wherein the court was tasked with determining whether federal patent law preempted the class-plaintiffs' state consumer protection law claims (*see In re EpiPen*, 336 F. Supp. 3d 1256, 1338 (D. Kan. 2018)). The allegations of the class-plaintiffs in *In re EpiPen* are similar to the State's allegations here: a group of manufacturer-defendants and a group of seller-defendants were alleged to "have maintained a monopoly over the EpiPen market and its profitable revenues by devising an illegal scheme to monopolize the market."[5] 336 F. Supp. 3d at 1275–77. The court noted defendants "cited no

---

[5] "Specifically, the Class Complaint alleges that [Defendant] violated state consumer protection laws by 'engaging in misleading, false, unfair and/or deceptive acts or practices by foreclosing from consumers and the general public the opportunity to purchase cheaper generic versions of the

authority holding that federal patent law permits a patent holder to commit unfair and deceptive practices that violate state consumer protection laws . . . simply because it owns patent rights," and instead observed "many courts have concluded just the opposite." *Id*. at 1333–34.

The Court in *In re EpiPen* ultimately rejected the defendants' motion to dismiss the class plaintiffs' state consumer protection law claims based on a federal preemption defense, *id*. at 1334 (collecting cases), and the Court must do the same here. The State is not challenging Manufacturer Defendants' rights under the patent laws to make pricing decisions, rather the State's consumer protection claims allege Manufacturer Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices that violated the MCPA. (Dkt. No. 2:23-cv-04364, ECF No. 65-1 ¶¶ 518–27.) Specifically, the State contends Manufacturer Defendants engaged in the following conduct constituting a deceptive trade practice in violation of the MCPA: (1) "representing that goods or services . . . have . . . characteristics . . . which they do not have . . ."; and (2) "making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions." (*Id*. ¶ 522 (first quoting Miss. Code § 75-24-5(2)(e), then quoting Miss. Code § 75-24-5(2)(k)).) Neither of these two claims has any bearing on Manufacturer Defendants' ability to set prices on their patented drugs; rather, the State is asserting Manufacturer Defendants engaged in unlawful conduct that caused consumers to pay inflated prices.

Accordingly, this Court finds the State's claims are not preempted by federal patent law.

### B.  Failure to Plead Unlawful Conduct

Manufacturer Defendants also argue the State's claims fail independently because "[they] do[] not adequately plead any unlawful conduct as to GLP-1s." (ECF No. 200-1 at 13–15.) They

---

EpiPen and/or cheaper products that could have competed with the EpiPen through anticompetitive practices including patent misuse, reverse 'pay-for-delay' settlements, and sham citizens' petitions as described herein." *In re EpiPen*, 336 F. Supp. 3d at 1334.

contend "[t]he factual allegations underlying the State's claims of unlawful conduct pertain solely to insulin and are absent as to GLP-1s." (*Id*. at 13.) Manufacturer Defendants maintain the State does not include any allegations to GLP-1s that would support its claims and "makes no attempt whatsoever to allege any causal nexus between the supposed 'Insulin Pricing Scheme' and the pricing of GLP-1s." (*Id*. at 14.) Further, many of the State's allegations regarding insulin cannot be imputed to GLP-1s because it is a new drug, and the State admits in its allegations "that 'research and development costs' are often 'large' for new drugs." (*Id*. at 14–15.)

The State argues this Court should reject Manufacturer Defendants argument because "the Manufacturers have already challenged the sufficiency of the State's allegations as to all at-issue drugs and their motion was denied in its entirety." (ECF No. 231 at 5 (citing (Dkt. No. 2:23-cv-04364, ECF No. 111).) The State takes issue with the fact "[t]he Manufacturer[ Defendants] did not seek reconsideration of the ruling and have not identified any new facts or law justifying reconsideration now, more than two years later, by a different court." (*Id*.) Manufacturer Defendants respond the Mississippi court decision does not apply to GLP-1s, as "the Mississippi court's decision does not so much as mention GLP-1s." (ECF No. 277 at 11.)

In its decision addressing Manufacturer Defendants' Motion to Dismiss the State's Third Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), the Mississippi District Court considered the sufficiency of the State's claims "alleging that the 'Manufacturer Defendants' conspired with the '[PBM] Defendants' . . . to artificially inflate the price of insulin drugs *and other diabetes medications*." (Dkt. No. 2:23-cv-04364, ECF No. 111 at 1 (emphasis added).) The court made clear it was not limiting its holding to insulin only—instead, it acknowledged the State's argument "that the Manufacturer Defendants manufacture the 'vast majority of insulins and other diabetic medications available in Mississippi'" and therefore could "'artificially and

9

willingly' raise their prices to gain formulary access for their respective diabetic treatments from the PBM Defendants." (*Id.* at 2 (emphasis added).) Throughout its Opinion, the court repeatedly referred to the "at-issue diabetic medication" or "other diabetic medication" rather than exclusively insulin. (*See id.* at 1, 2, 3, 9.)

While Manufacturer Defendants are correct that the court did not mention GLP-1s by name, the court repeatedly referred to diabetes medication generally rather than specifically insulin. (*See generally id.*) Moreover, Manufacturer Defendants specifically moved to dismiss *all* of the State's claims for failing to state a claim—not just those relating to insulin. (Dkt. No. 2:23-cv-04364, ECF No. 84 at 2, 22.) Because the State's allegations in its Third Amended Complaint were already found to be sufficient, the Court rejects Manufacturer Defendants attempt to relitigate the issue. *See Palinode, LLC v. Plaza Servs., LLC*, Civ. A. No. 21-1378, 2023 WL 128654, at *2 (D. Del. Jan. 9, 2023) ("[A] rule 12(c) motion does not provide an opportunity to relitigate issues raised and decided on a motion to dismiss." (citing *Bone v. Univ. of N.C. Health Care Sys.*, Civ. A. No. 18-994, 2021 WL 395547, at *6 (M.D.N.C. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 3196437 (M.D.N.C. Mar. 31, 2021))). The Court therefore finds the State sufficiently pleads unlawful conduct related to GLP-1s.

Accordingly, Manufacturer Defendants' Motion is **DENIED**.

## IV.   CONCLUSION

For the reasons set forth above, and for good cause having been shown, Manufacturer Defendants' Motion for Judgment on the Pleadings (ECF No. 200) pursuant to Federal Rule of Civil Procedure 12(c) is **DENIED**. An appropriate Order follows.

Date: September 5, 2025                     */s/ Brian R. Martinotti*
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**

10